In the Matter of the Estate of FRED B. LYON, Deceased. ERWIN G. SHAFER et al., Appellants; WALTER E. LYON, as Administrator C. T. A. of FRED B. LYON, Deceased, et al., Respondents.

Third Department, July 9, 1956.

256

*T. Paul Kane* for appellants.

*William S. Fancher* for Walter E. Lyon, as administrator *c. t. a.,* respondent.

*Paul F. Eaton* for Marvin B. Lyon and another, respondents.

*Francis L. Smith* for Harold O. Esmay, as temporary administrator of the estate of Elizabeth B. Lyon, deceased, respondent.

BERGAN, J.  This is a discovery proceeding maintained by the estate of a husband against the estate of a wife who was his executrix, and other parties.  A decree has been entered by the Surrogate of Delaware County, who has jurisdiction of the husband's estate, directing that the amount of a deposit represented by certificates of shares in a savings and loan account which the wife had placed in joint ownership with herself and two other parties payable to the survivor, be paid instead to the estate of the husband.  Fred B. Lyon was the husband; Elizabeth B. Lyon, the wife; and appellants Erwin G. Shafer and Lena Shafer, are the survivors named on the savings account jointly with the wife.

The will of the husband under which the wife acted as executrix gave to her " the life use of all my property, both real and personal ", but " with the right and privilege  *  *  *  to use as much of the principal of my said estate as may be necessary for her proper care, maintenance and support."

The theory of the Surrogate's decision, as we understand it, is that in creating the joint account with the appellants Shafer, the wife used the resources of the estate; and that the Shafers knew enough about the affairs of the wife as executrix to be chargeable with knowledge that they were being benefited by the use of estate resources.  It is not contended there was any consideration given by the Shafers for the benefits they received.

A substantial quantum of proof was taken on the question of the mental competency of the wife at the time she created the joint account; and some small amount of proof was directed to the question of undue influence upon her.  There is, however, no allegation in the petition under which an accounting is sought which pleads incompetency or undue influence; and the Surrogate made no finding on this subject, but merely recited what the claim of the husband's estate was in this respect.

We are of opinion that on this record, at least, the competency of the wife at the time she created the joint account is of no significance.  The husband's estate must show that the joint account was set up with the property belonging to the husband's estate; and this would be chargeable to the executrix whether she were mentally competent or not.  Her incompetency, if it existed, would not help the husband's estate to get back property from third parties unless it is clear that the estate owned the property.

In reviewing the course of the administration of the husband's estate, the special and personal power of the wife in providing for herself must be kept in clear focus.  She had the right " to

use '' for her own '' proper care, maintenance and support '' from the husband's estate '' as much of '' the principal '' as may be necessary ''.

She was, therefore, the sole judge of what would be necessary for her own maintenance; and while there could be a continuing dichotomy between her duty to preserve the estate and her right to look out for herself too, this is the way the power was granted by the husband. He made her the sole judge of her own needs. Such a power must be construed by viewing its exercise liberally.

The scope of the wife's privilege to invade the principal of the husband's estate for her own support under these circumstances is substantially unlimited. It has been held in a somewhat similar context that '' no one may question or go behind such a determination '' (Matter of Woollard, 295 N. Y. 390, 394; see, also, Swarthout v. Ranier, 143 N. Y. 499; Matter of Parsons, 39 Misc. 126). As Surrogate GRIFFITHS noted in Matter of Walsh (85 N. Y. S. 2d 207, 210): '' To compel the widow to establish from time to time that her financial circumstances justified an invasion of principal would be wholly inconsistent with the testator's evident confidence in her good faith and judgment ''.

It is true enough, as the Surrogate held, that where funds in the hands of an executor or trustee are commingled with personal funds of the fiduciary officer, all of his funds are impressed with a trust. But there was nothing decided in the case he cites, Matter of Gentry (139 Misc. 759) which would sustain a theory that the trust extends to more of the funds of the fiduciary than would be enough to satisfy her obligation.

The Surrogate has found that the property of the estate had been so commingled with the property owned by the wife that '' it is impossible to accurately follow the channels of monies which should have been deposited in the estate of Fred B. Lyon ''. His theory of decision seems to be that because of this fact, the entire amount of the joint account created by the wife should be attributed to the estate.

We think that the better rule to follow in fairness to the estate of the wife accounting for her acts as executrix, to the estate of the husband, and to the rights of the transferees of the savings and loan account, would be to attempt first of all to ascertain what part of the principal of the husband's estate the wife used, as she had a right to use, for her own support. The amount so used should be regarded as accounted for; and to charge the balance left in assets in the wife's estate as chargeable to the husband's estate to the extent needed. Only

if these together do not satisfy the balance due the husband's estate would it seem to be proper to follow the property to the possession of third parties; and then only to the extent needed to complete the account.

Beyond that point it seems to us that the estate of the husband has no interest in the wife's property. Her own estate, of course, will have a direct interest of its own, which is quite another matter. The wife's financial transactions here are numerous and confused, and it is difficult to follow them in detail. We certainly ought not undertake to do so on this record; but it is fair to say that a fair proportion of the money with which the wife carried on these transactions was her own.

A wife placed in control of her husband's estate in these circumstances may properly charge the principal of the estate with reasonable amounts she deems necessary for her own support even though she has other resources of her own. Certainly the relatively small resources this wife had of her own cannot be viewed as limiting her right in good faith to use for her own support substantial portions of the principal of the husband's estate.

There seem to us to be two main items which on this record are indications of an intention by the wife to provide for her own support which have not been given full weight by the Surrogate. One is the item of $3,100 which the wife gave to one of her sons at a time when she lived with him for improvement of his home to provide room for her accommodation. The Surrogate found this to have been a portion of the principal of the husband's estate used by the wife for her own support. We agree with this finding; but we would see to it that due credit is allowed for it before any amount might be considered as chargeable against the property in the name of the Shafers which the Surrogate did not think it necessary to do.

The other item is the sum of $5,800 which she gave on a mortgage to the same son and which the Surrogate found she provided from her own funds. Not only does it remain undemonstrated that this money actually came from the estate of the husband, either in the record before the Surrogate or in the brief of the representative of the husband's estate in this court; but the argument runs through the brief for the husband's estate that the confusion of assets is so complete that no demonstrated segregation of the estate property from the wife's own property is possible.

We look more closely, therefore, at the mortgage for $5,800 itself; it is obvious from intrinsic examination of this instrument that the money was loaned to the son to help provide for

the wife's maintenance for the rest of her life in some rough approximation of an annuity. The son and his wife as mortgagors were to pay it back in monthly installments of $22.50; and when Elizabeth C. Lyon died, the balance on the mortgage was to be deemed paid and the mortgage discharged.

Since she was then living with her son, it is difficult to think of this kind of a transaction as anything other than a provision for her support and maintenance, both in the use of the monthly installments as they became due, and in the inducement to the son to care for her by virtue of the discharge of the balance of the debt on her death. We see no basis in the record to allocate this mortgage to the personal resources of the wife.

Indeed, she lived until 1952, about 11 years after her husband's death, and if all of the sums indicated by the cost of improvement of the son's property and the mortgage were spread over this period and applied to the support of Elizabeth B. Lyon, it would average about $800 a year. It seems to us that, as a very minimum, she would be justified in using this amount from the husband's estate for her own support whether her own property was or was not mingled with the property of the estate of her husband.

It seems unreasonable to say, as the representative of her husband's estate argues, that her estate is now required to show for the 11 years of her life after the death of the husband that the whole principal has been held fully intact except $3,100, the amount the husband's estate is willing to attribute to her support for 11 years.

A reasonable amount ought to be chargeable with her own support where her accounts are obscure and her funds commingled. We cannot exact strict accounting methods from an aged woman, now dead and unable to explain her proceedings; and, moreover, a woman who had the power in her own interest to invade the principal.

There are some small variations in calculation of the respective parties; but we accept it as a fact that the wife was accountable as executrix of the husband's estate for $13,572. If the $8,900 we have been discussing be deducted from this amount, she would be required, and her estate is now required, to account to the husband's estate for $4,672.

She had, however, on deposit at her death the sum of $6,900 in a bank account, which is entirely adequate to discharge in full this obligation to her husband's estate without resort to the more complex question of setting aside the joint interest given by her to the Shafers.

In these circumstances the husband's estate has no interest in the transaction with the Shafers which would require adjudication in this proceeding.  The estate of the wife has, however, such an interest; and has the right to have it adjudicated in a direct action, or by other appropriate proceeding.  We do not regard such an issue between such parties to have been determined by the decree before us.

In the first place neither the decree nor the decision attempts to reach or decide any such issue.  It is true that the estate of the wife was before the Surrogate, then represented by her temporary administrator, and that it was stipulated by him and by all of the parties at the end of the accounting proceeding that the proceeding be broadened so that the Surrogate could '' consider all of the rights of all of the parties with respect to the matters that have come up in this court  *  *  *  that the Court decide the whole matter on the merits.''

The difficulty with that stipulation on appeal is twofold.  In the first place the Surrogate did not decide the issue of mental incompetency or undue influence as between the estate of Elizabeth B. Lyon and the Shafers because he was of opinion it was unnecessary to decide it.  In the second place there is nowhere in the record any claim or allegation by her estate against the Shafers; no appeal is taken from that part of the decree directing the payment of money from the wife's estate to the husband's estate; and even on this appeal the position of her temporary administrator is equivocal on this question.

The brief of the wife's administrator states his position to be, that while the part of the decree directing the payment by her estate to the husband's estate is adverse to her estate, nevertheless the administrator feels required to argue to sustain the decision because of the identity of the ultimate beneficiaries of both estates.

No clear-cut position that Mrs. Lyon was incompetent is taken in his brief, although it is argued that proof in support of her incompetency was admissible as a matter of law.  On the whole we do not regard the issue of the right of the wife's estate to disavow the transfer to the Shafer's to have been adjudicated.

The decree should be modified to strike out so much thereof as directs the payment of the account in the name of appellants Shafer to the administrator of Fred B. Lyon; and as thus modified, affirmed without prejudice to the institution of any action or proceeding by the administrator of Elizabeth B. Lyon in respect of such an account in the name of appellants Shafer as may be advised, without costs.

FOSTER, P. J., COON, HALPERN and GIBSON, JJ., concur.

Decree modified, on the law and facts, to strike out so much thereof as directs the payment of the account in the name of appellants Shafer to the administrator of Fred B. Lyon; and as thus modified, affirmed, without prejudice to the institution of any action or proceeding by the administrator of Elizabeth B. Lyon in respect of such an account in the name of appellants Shafer as may be advised, without costs. [See *post,* p. 800.]